JASON WHOOPER (279972)
JASON WHOOPER ATTORNEY AT LAW
6363 Greenwich Dr., Ste 140
San Diego, California 92122
Telephone:  619-957-5169
Facsimile:   619-717-2111
E-mail: jason@jasonwhooper.com

*Counsel for Plaintiff Dennis R. Blake, Jr.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS R. BLAKE, JR., an individual,<br><br>Plaintiff,<br><br>*v.*<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violation of 15 U.S.C. 1693m et al<br>2. Negligence<br>3. Violation of Cal. Bus. & Prof. Code 17200 et seq. Unfair Competition Law ("UCL")<br><br>JURY DEMANDED |

Plaintiff DENNIS R. BLAKE, JR. (hereinafter "Mr. Blake" or "Plaintiff"), for causes of action against Defendants WELLS FARGO BANK, NATIONAL ASSOCIATION. (hereinafter "Defendant" or "Defendants" or "Wells Fargo"), and DOES 1-10, alleges as follows:

## **INTRODUCTION**

1.      Mr. Blake is informed and believes and thereupon alleges that Wells Fargo has victimized countless customers through illegal sales tactics to obtain high

sales of their banking products.  Wells Fargo's business model is based on selling each customer multiple banking products, which Wells Fargo refers to as "solutions".  To achieve its goal of selling many "solutions" to each customer, Wells Fargo imposes unrealistic sales quotas on its employees, and has intentionally adopted policies that forseeably drive its bankers to engage in fraudulent behavior to meet Wells Fargo's unreachable quotas.

2.      Mr. Blake is informed and believes and thereupon alleges that Wells Fargo recently published a brochure wherein Wells Fargo states:

"'Going for gr-eight.'  Our average retail banking household has about six products with us.  We want to get to eight… and beyond.  One of every four already has eight or more.  Four of every 10 have six or more."

3.      Mr. Blake is informed and believes and thereupon alleges that Wells Fargo's quotas are difficult for many of its bankers without engaging in abusive, fraudulent practices described below.  Furthermore, Wells Fargo constantly monitors its sales quotas to enforce them.  Mr. Blake is informed and believes and thereupon alleges that Wells Fargo's District Managers report and discuss daily sales for each branch and each sales employee four times a day, at 11:00 a.m., 1:00 p.m., 3:00 p.m., and 5:00 p.m.  Wells Fargo management often reprimands employees who fail to meet their sales quotas and/or tells those employees to "do whatever it takes" to meet their quotas.  In order to achieve its goal of eight accounts per household, Wells Fargo puts unrelenting pressure on its bankers to open numerous accounts per customer.

4.      Mr. Blake is informed and believes and thereupon alleges that Wells Fargo has strict quotas regulating the number of daily "solutions" that its bankers much reach and Wells Fargo managers constantly hound, berate, demean, and threaten employees to meet these unreachable quotas.

5.      Mr. Blake is informed and believes and thereupon alleges that Wells Fargo's employees have engaged in fraudulent, unfair, and unlawful conduct,

including opening customer accounts, issuing credit cards, and issuing debit cards, without customers' authorization to "do whatever it takes" to meet their quotas. Further, Wells Fargo has known about and encouraged these practices for years, and has declined to stop Wells Fargo employees' behavior for the protection of Wells Fargo customers.

6. Mr. Blake is informed and believes and thereupon alleges that on the few occasions when Wells Fargo takes action against its employees for these unethical sales practices, Wells Fargo further victimizes its customers by failing to inform victimized customers of the breaches, refund fees and monies taken from the customers accounts, or remedy the injuries Wells Fargo caused to the customers. Indeed, Wells Fargo has a policy of denying customers' injuries happened, sweeping these wrongful banking occurrences/practices under the rug, and blaming customers' injuries on everyone but Wells Fargo, including blaming their employees and more shockingly, Wells Fargo's own customers for somehow injuring themselves.

7. Mr. Blake is informed and believes and thereupon alleges that Wells Fargo's bankers and managers have engaged in practices called "gaming" for years. This consists of opening and manipulating customer accounts to generate fees through fraudulent, unfair, and unlawful methods, including but not limited to, adding unwanted secondary accounts to primary accounts without customers' signatures or authorization. Other practices utilized as part of these "gaming" schemes have included misrepresenting the costs, benefits, fees, and/or attendant services that come with an account or product to meet sales quotas.

8. Mr. Blake is informed and believes and thereupon alleges that Wells Fargo's "gaming" practices are so pervasive in its business model that some have been given names, for example:

a. "*Pinning*" refers to Wells Fargo's practice of assigning, without customer authorization, Personal Identification Numbers ("PINs") to

customer ATM card numbers with the intention of, among other things, impersonating customers on Wells Fargo computers, and enrolling those customers in online banking and online bill paying without their consent.  In this practice, a Wells Fargo banker obtains a debit card number, and personally sets the PIN, often to 0000, without customer authorization.  "Pinning" permits a banker to enroll a customer in online banking, for which the banker would receive a solution (sales credit).  To bypass computer prompts requiring customer contact information, bankers impersonate the customer online, and input false generic email addresses such as 1234@wellsfargo.com, noname@wellsfargo.com, or none@wellsfargo.com to ensure that the transaction is completed, and that the customer remains unaware of the unauthorized activity.

b.      "*Sandbagging*" refers to Wells Fargo's practice of failing to open accounts when requested by customers, and instead accumulating a number of account applications to be opened at a later date when it is most beneficial to Wells Fargo employees, such as when a new sales reporting period commences.  Specifically, Wells Fargo employees collect manual applications for various products, stockpile them in an unsecured fashion, and belatedly open up the accounts (often with additional unauthorized accounts) in the next sales reporting period, frequently before or after banking hours, or on bank holidays such as New Year's Day.

c.      "*Bundling*" refers to Wells Fargo's practice of incorrectly informing customers that certain products are available only in packages with other products such as additional accounts, insurance, annuities, and retirement plans.

9.     Mr. Blake is informed and believes and thereupon alleges that although Wells Fargo has ostensibly terminated a small number of employees who have engaged in "gaming", other Wells Fargo employees have been rewarded for these practice, and promoted, perpetuating the "gaming" practices.  Moreover, Wells Fargo continues to impose companywide goals of attaining as many accounts as possible at any expense, further encouraging the practice of "gaming".  Wells Fargo thereby puts its employees in a dilemma, forcing its employees to choose between keeping their jobs and opening unauthorized accounts.

10.     Mr. Blake is informed and believes and thereupon alleges that Wells Fargo has also failed to inform its customers when their personal information has been accessed or compromised by Wells Fargo's gaming practices, in breach of its statutory duties to do so, causing its customers additional harm.

11.     Mr. Blake is informed and believes and thereupon alleges that Wells Fargo knew, or in the exercise of reasonable care should have known, that its employees open unauthorized accounts.  For example:

a.     Mr. Blake is informed and believes that Wells Fargo customers often enter branches to complain about unauthorized accounts; many victims have even contacted Wells Fargo management by phone.

b.     Mr. Blake is informed and believes that Wells Fargo has access to, and frequently monitors, actions taken on its computers by employees.  Wells Fargo has been put on notice by unusual activity such as: numerous accounts being opened on January 1, a bank holiday; numerous unfunded accounts; frequent reopening of closed accounts; and customer accounts with the only account activity being Wells Fargo fees.

c.     Mr. Blake is informed and believes that Wells Fargo requires that all new customer accounts be approved by a branch manager or assistant manager, thereby providing Wells Fargo management with a

clear record of the number and types of accounts opened for each customer.

d.     Mr. Blake is informed and believes that Wells Fargo is also aware its daily, weekly, and monthly quotas are unrealistic for employees during normal working hours, since they have generated numerous complaints and lawsuits by employees.

e.     Mr. Blake is informed and believes that Wells Fargo's Online Banking accounts are often opened by Wells Fargo with obviously false customer contact information such as noname@wellsfargo.com.

f.     Mr. Blake is informed and believes that Wells Fargo has terminated and/or otherwise disciplined a number of employees for gaming, but far fewer than have actually engaged in the practices, given Wells Fargo's widespread imposition of the quota system.

12.     Mr. Blake initially lost approximately $7,600.00 in cash as a result of Wells Fargo's intentional illegal gaming practices and cover up, breach of its duty to keep Mr. Blake's money and confidential information secure, and further breach of its duty to inform him that his information was accessed or compromised.  As a direct consequential and foreseeable result, he later suffered significant economic damages from his loss of self employment income and from negative entries on his credit due to his inability to pay his bills; and he suffered severe emotional distress through shame, embarrassment, and depression from Wells Fargo's continuing conduct, Wells Fargo's refusing to reimburse Plaintiff, Wells Fargo blaming Mr. Blake for stealing his own money, and Mr. Blake having to borrow money from his mother to survive.

## **PARTIES**

### **(Plaintiff)**

13.     Plaintiff is, and at all times mentioned herein was, an individual residing in the County of Los Angeles, California.

**(Defendant)**

14. Defendant Wells Fargo is, and at all times mentioned herein was, a corporation doing business in the County Los Angeles, California.

15. Plaintiff is informed and believes that at all relevant times, Wells Fargo had its primary place of business in Sioux Falls, South Dakota. Wells Fargo provides Wells Fargo & Company's personal and commercial banking services, and is Wells Fargo & Company's principal subsidiary.

16. Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged of the defendants sued herein as DOES 1-10, inclusive, but on information and belief alleges that said defendants are in some manner legally responsible for the unlawful actions, policies, and practices alleged herein, and therefore sues such defendants by such fictitious names.

17. Plaintiff is informed and believes, and thereon alleges that each defendant named herein was the agent of the other, and the agent of all Defendants. Plaintiff is further informed and believes, and thereon alleges, that each Defendant was acting within the course and scope of said agency at all relevant times herein, for the benefit of themselves, each other, and the other defendants, and that each defendant's actions as alleged herein was authorized and ratified by the other Defendants.

18. In this Complaint, when reference is made to any act or omission of Wells Fargo or any other Defendant, such allegations shall include the acts and omissions of all Defendants, their owners, officers, directors, agents, employees, contractors, vendors, affiliates, and representatives of all Defendants while acting within the course and scope of their employment or agency on behalf of said Defendants.

/ / /

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

7.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

19.     The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. 1693m et al.

20.     Venue is proper in the United States District Court, Central District of California by virtue of 28 U.S.C. §§ 1391(b) and (d) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Los Angeles County, California and Wells Fargo has significant continuous and systematic contacts in this district.

## GENERAL ALLEGATIONS

21.     Mr. Blake owns a small electrician business and used Wells Fargo Bank for his business checking.  He had been a loyal Wells customer for over a decade when the facts and circumstances giving rise to this action occurred.  Mr. Blake has never signed up for Wells Fargo's online banking, but at some point Wells Fargo signed him up for online banking without his consent.

22.     On July 16, 2014, Wells Fargo made an online transfer of $7,000.00 from Mr. Blake's Wells Fargo Bank account x5593 without Mr. Blake's authority.

23.     On July 17, 2014, Wells Fargo made an online transfer of $600.00 from Mr. Blake's Wells Fargo Bank account x6055 without Mr. Blake's authority.

24.     On July 18, 2014, Wells Fargo, made an online transfer of $650.00 from a Wells Fargo Bank account x1965, which Mr. Blake did not open nor authorize, but was in his name.  Wells Fargo has alleged that this $650 is the same money Wells Fargo moved from Wells Fargo Bank account x5593 and x6055.

25.     Wells Fargo opened several additional bank accounts in Mr. Blake's name without Mr. Blake's consent, including Wells Fargo Bank accounts: x0514, x0674, and x1957.

26.     From July 16, 2014 to July 18, 2014, unknown persons apparently used Wells Fargo Bank ATM/Debit Card x5710, in Mr. Blake's name, to make twenty (20) unauthorized PIN Purchases, ATM Withdrawals, and Non-Wells Fargo

ATM Transaction Fees totaling $7,704.30 in Dekalb, Illinois and in Sycamore, while Mr. Blake was in California.

27.     Collectively, the twenty (20) fraudulent transactions included multiple daily maximum amount ATM cash withdrawals in a single day, multiple declined transactions, and multiple withdrawal limit exceeded transactions over the 3 days from July 16, 2014 to July 18, 2014.

28.     On July 16, 2014, Wells Fargo failed to fulfill its duty to prevent, investigate, stop, or notify Mr. Blake of the seven (7) suspicious unauthorized electronic fund transfers.

29.     On July 17, 2014, Wells Fargo failed to fulfill its duty to prevent, investigate, stop, or notify Mr. Blake of the additional ten (10) suspicious unauthorized electronic transfers that occurred that day nor prevent, investigate, stop, or notify Mr. Blake of the initial seven (7) suspicious unauthorized electronic fund transfers that occurred the day before on July 16, 2014.

30.     On July 18, 2014, Wells Fargo failed to fulfill its duty to prevent, investigate, stop, or notify Mr. Blake of the additional three (3) suspicious unauthorized electronic transfers that occurred that day nor prevent, investigate, stop, or notify Blake of the initial seventeen (17) suspicious unauthorized electronic fund transfers that occurred in previous days.

31.     On or about July 17, 2014, Mr. Blake discovered that he could not locate his ATM/Debit Card.

32.     On or about July 18, 2014, Mr. Blake checked his Wells Fargo account balances and found his bank Wells Fargo bank accounts x5593 and x6055 emptied by the online unauthorized electronic fund transfers more fully described above. Mr. Blake immediately reported the unauthorized electronic fund transfers to Wells Fargo and filed a City of Hermosa Beach Police Department police report, numbered 14-2353, on July 18, 2014.

33.     From July 18, 2014 through September 2014, Mr. Blake submitted

several fraud claims to various Wells Fargo departments for reimbursement of the money fraudulently removed from his bank accounts by Wells Fargo.  Mr. Blake is informed and believes and thereupon alleges that Wells Fargo intentionally, maliciously, wrongfully, in bad faith, and in conscious disregard for Mr. Blake's well being, denied all of Mr. Blake's claims for reimbursement, knowing that Mr. Blake did not authorize the electronic funds transfers at issue.  Mr. Blake is further informed and believes, and thereupon alleges that Wells Fargo had knowledge of who the people responsible for the unauthorized electronic fund transfers were and that Wells Fargo knew its employees either were involved or likely to have been.

34.     On or about July 18, 2014, Wells Fargo Digital Channels Group sent Mr. Blake a letter with Case Number 167334568, stating:

> "We have received your recent claim and welcome the opportunity to address your concerns regarding this matter.  So that we can research your case, please complete the enclosed packet containing our Affidavit and Questionnaire of Online Banking Fraud."

35.     On or about July 21, 2014, Wells Fargo Claims Assistance Center sent Mr. Blake a letter with Claim Number 30718140189, stating: "We are researching your inquiry from 07/18/2014 about charges of $7,674.80 on your account above."

36.     Mr. Blake is informed and believes and thereupon alleges that Wells Fargo immediately determined that the bizarre electronic fund transfers more fully described above were caused by a fraudulent scheme that Mr. Blake did not participate in, or in the alternative, that Wells Fargo unreasonably refused to fulfill its duty to investigate the matter in good faith.

37.     On or about July 25, 2014, Wells Fargo Claims Assistance Center sent Mr. Blake a letter with Claim Number 30718140189, stating:

> "Based on the information available to us, and because the transactions were made using your card and Personal Identification Number (PIN), we found it was made by you or someone who had your permission.  Please consider

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

10.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

your claim closed."

38.    Wells Fargo failed to provisionally re-credit Mr. Blake's accounts, refused to make a good faith investigation of the errors Mr. Blake claimed in his accounts, and had no reasonable basis for believing that Mr. Blake's accounts were not in error.  Wells Fargo either knew or should have known that its employees caused Mr. Blake's bank accounts to be in error.

39.    Wells Fargo knowingly and willfully concluded that Mr. Blake's accounts were not in error and closed his fraud claims in less than 7 days when such conclusion could not reasonably have been drawn from the evidence available to Wells Fargo that twenty (20) transactions including multiple daily maximum amount ATM cash withdrawals in a single day, multiple declined transactions, multiple ATM/Debit Card PIN purchases, and multiple withdrawal limit exceeded transactions, totaling over $7,600 in a 3 day period in the state of Illinois while Mr. Blake was in California.  Moreover, Wells Fargo knew that its employees in regularly engaged in "gaming" and "pinning" to meet Wells Fargo's unrealistic quotas, and knew that Mr. Blake was likely a victim of Wells Fargo's practices.

40.    Further, Wells Fargo also knew or should have known that the unauthorized electronic fund transfers were in error, unauthorized, and fraudulent because Wells Fargo was under investigation by the Office of the Los Angeles City Attorney, Criminal Branch, for Wells Fargo's illegal "gaming" practices at the time, and Mr. Blake resides in Los Angels County where countless other victims reside.

41.    Indeed, Wells Fargo intentionally failed to prevent, stop, warn, or notify Mr. Blake of these suspicious transactions that it should have flagged because it seeks to sweep its practices under the rug, evade liability, and avoid public scrutiny at all costs.  On or about July 25, 2014, Mr. Blake closed all deposit accounts in his name with Wells Fargo.

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

11.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

42.     On or about July 28, 2014, Mr. Blake submitted a "Statement of disputed debit/prepaid card item(s)" to the Wells Fargo Claims Assistance Center.

43.     On or about July 29, 2014, Mr. Blake faxed Wells Fargo an "Affidavit of Online Fraud" claiming fraudulent online transfers occurred in the amount of $7,000 on July 16, 2014 and $600 on July 17, 2014, totaling $7,600 out of Mr. Blake's Wells Fargo Bank accounts x6055 and x5593.

44.     On or about July 31, 2014, Wells Fargo Digital Channels Group sent Mr. Blake a letter with Case Number 167334568, stating:

> "While researching your inquiry about unauthorized online transaction(s) in the total amount of $8,250 on your accounts below, the Wells Fargo Digital Channels Group Fraud Operations department has completed our research. Based on the information available to us, we have found the transaction(s) were authorized transfers made between your accounts ending in 1965, 6055, 5593, and 1957 between the dates of 7/16/14 and 7/18/14.  As a result, please consider your Online Fraud claim closed."

45.     On or about August 1, 2014, Wells Fargo Digital Channels Group sent Mr. Blake a letter with Case Number 167334568, stating:

> "Your claim indicates that the transaction(s) listed above totaling $8,250 were not authorized by you.  Upon further research, it was determined that these transactions were applied to accounts that were in your name.
>
> Based on the reason(s) stated below, your claim against the Online Security Guarantee is denied:
>
> -Receipt of benefit
>
> Your claim with the Wells Fargo Digital Channels Group Fraud Operations Department is now closed."

46.     On or about August 11, 2014, Wells Fargo Claims ATM/Debit Card Executive Office, Customer Care sent Mr. Blake a letter with Claim Number 30718140189, stating:

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

12.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

"Claim 30718140189 was filed July 18, 2014, when Wells Fargo was informed unauthorized transactions were completed with debit card ending in 5710, which you state was lost.  The Claims Assistance Center investigated this matter and found it reasonable to conclude the transactions were performed by you or by someone with whom you shared  the card.  Therefore, the claim was denied.

Upon receipt of your inquiry the ATM/Debit Card Executive Office evaluated this claim and supports the decision previously communicated by our Claims Assistance Center."

47.     In or around August 2014, Mr. Blake reissued his claim for reimbursement to Wells Fargo ATM/Debit Card Executive Office and had a follow up phone call on or about August 27, 2014, with the Wells Fargo ATM/Debit Card Executive Office, explaining it is unreasonable and illogical for Wells Fargo to deny his fraud claim solely on the bases that Wells Fargo determined the unauthorized accounts were opened in Mr. Blake's name, the ATM/Debit Card used was allegedly mailed him, and the PIN allegedly used was assigned to him.

48.     On or about September 8, 2014, Wells Fargo Claims ATM/Debit Card Executive Office, Customer Care sent Mr. Blake a letter with Claim Number 30718140189, stating:

"This letter is in response to the documentation submitted to the ATM/Debit Card Executive Office regarding the above referenced claim.  It is also in follow up to your August 27, 2014, conversation with the ATM/Debit Card Executive Office.

Thank you for detailing your concerns regarding transactions that posted to your account.  We reviewed the debit card and can confirm the card was mailed to the address we have on file, which is detailed above.  We found no record the card was mailed to the Paramount, IL address indicated on the document you provided.  We can also confirm there were no transactions

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

13.

COMPLAINT FOR DAMAGES

Blake v. Wells Fargo

approved over the limits of the card.

Based on our evaluation of claim 30718140189 the ATM/Debit Card Executive Office continues to support the decision made by the Claims Assistance Center.

Regarding your Online Banking Concern, our records indicate that we have already responded to this matter in a letter dated August 1, 2014.  Enclosed is a copy of the letter for your review.  Our response remains the same.  We respectfully decline your request for reimbursement.  We apologize for the inconvenience this matter has caused you."

49.    Mr. Blake is informed and believes that Wells Fargo knowingly and willfully concluded that Mr. Blake's accounts were not in error when such conclusion could not reasonably be drawn from the evidence available to Wells Fargo at the time of its investigation and/or Wells Fargo did not make a good faith investigation of the error Mr. Blake alleged in his fraud claims, because Wells Fargo has a systematic policy of initially denying all fraud claims by Wells Fargo Online Banking and ATM/Debit Card fraud victims.  Mr. Blake is further informed and believes that on September 8, 2014 when it denied Mr. Blake's request for reimbursement, Wells Fargo knew that it was under investigation by the Office of the Los Angeles City Attorney, Criminal Branch for Wells Fargo's "gaming" and "pinning" practices and that Mr. Blake was a victim or very likely a victim of Wells Fargo's "gaming", "pinning", fraud, and unauthorized electronic fund transfers.

50.    Even at the time of the drafting of this Complaint, 10 months after Wells Fargo's "gaming", "pinning", fraud, and unauthorized electronic fund transfers cleaned out over $7,600 from Mr. Blake's bank accounts, Wells Fargo intentionally continues to refuse to remedy the error after Wells Fargo has already determined Mr. Blake was a victim of banking fraud.

51.    As a proximate cause of Wells Fargo's breaches of duty and wrongful conduct, Mr. Blake has lost over $7,600 in cash and interest from his Wells Fargo

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

14.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

accounts; lost significant business profits due to a lack of capital to buy materials and tools for his electrician business, buy gas for his van, pay his van's registration, and pay his work cell phone bill among other business operations expenses; lost good standing to his credit from having an inability to pay his bills, and incurring thousands of dollars in financing late fees and penalties added to his credit card accounts, car note, and other financed accounts; and lost financial stability and solvency.

52.     Mr. Blake also suffered and continues to suffer severe depression, shame, and anxiety with other pain and suffering from receiving an eviction notice from his landlord and thinking he would be thrown out on the streets; losing his ability to confidently and reliably pay his personal and business bills; receiving harassing phone calls from creditors for unpaid bills including his car payments and credit card payments; receiving accusations from Wells Fargo that he fraudulently stole his own money and/or fraudulently filed fraud reimbursement claims with Wells Fargo; losing his health insurance and the peace of mind that comes with having it after he could no longer afford to pay the monthly premiums; having to ration food and buy poverty standard groceries because he could not afford to buy his usual groceries; and borrowing money from his mother for the first time, to the tune of thousands of dollars, in his attempt to survive.

53.     Mr. Blake also suffered and continues to suffer loss of enjoyment of life because he suffers sleep disturbances from this Wells Fargo ordeal, has become too lethargic from stress to do all the activities he regularly enjoys, and can no longer afford to engage in the activities he used to enjoy.

54.     Mr. Blake also has incurred and continues to incur thousands of dollars in legal fees and litigation costs.

/ / /

Jason Whooper
Attorney at Law
San Diego

15.

COMPLAINT FOR DAMAGES

Blake v. Wells Fargo

## **FIRST CAUSE OF ACTION**

### **(Violation of 15 U.S.C. 1693m et al.)**

55.     Plaintiff repeats and re-alleges each and every paragraph above as though fully set forth here.

56.     An unauthorized electronic fund transfer constitutes an "error" pursuant to 15 U.S.C. § 1693f(f)(1).  Pursuant to 12 C.F.R. § 1005.2, "'[u]nauthorized electronic fund transfer' means an electronic fund transfer form a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit." Pursuant to 12 C.F.R. § 1005.3(b), "'electronic fund' transfer means any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account."  This includes, but is not limited to automated teller machine transfers, direct deposits or withdrawals of funds, and transfers resulting from debit card transactions.

57.     15 U.S.C. § 1693f requires banks that receive a written or oral notice of "error" from a consumer within 60 days of the bank issuing documentation of the alleged "error", to make a good faith investigation of the alleged "error" and promptly correct the error no more than one business day after determining there was an "error".

58.     Wells Fargo, signed Mr. Blake up for online banking, created multiple unauthorized Wells Fargo accounts in Mr. Blake's name, and linked them to Mr. Blake's Wells business checking accounts.  On July 16, 2014 and July 17, 2014 Wells Fargo transferred a total of $7,600 out of Mr. Blake's business checking accounts and then unknown persons converted the money via twenty (20) unauthorized electronic fund transfers including multiple maximum daily limit ATM cash withdrawals in the same day, in addition to multiple daily ATM/Debit Card PIN purchases over a 3 day period from July 16, 2014 to July 18, 2014.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

59.     Wells Fargo breached its duty to maintain reasonable safeguards and procedures to protect Mr. Blake's money.  Wells Fargo also breached its duty to notify Mr. Blake of the unauthorized electronic fund transfers.

60.     Mr. Blake immediately reported the "error" to Wells Fargo, and filed a police report on July 18, 2014.  Mr. Blake has desperately begged Wells Fargo for reimbursement on numerous occasions since July 18, 2014.

61.     Wells Fargo refuses to re-credit or reimburse Mr. Blake's money.  Mr. Blake is informed and believes that Wells Fargo did not make a good faith investigation of the alleged "error" and/or did not have a reasonable basis for believing Mr. Blake's account was not in "error" when Wells Fargo denied Mr. Blake's fraud claims.  Furthermore, Mr. Blake is informed and believes that Wells Fargo wrongfully continues to refuse to re-credit and/or reimburse Mr. Blake even though Wells Fargo has already determined Mr. Blake was a victim of Wells Fargo "gaming" and "pinning", and/or identified the parties, fraud schemes, and/or fraud rings responsible for depleting Mr. Blake's bank accounts without Mr. Blake's involvement.

62.     Mr. Blake is informed and believes that as part of Wells Fargo's systematic policy of automatically denying its customers' claims of "error" due to unauthorized electronic fund transfers, and covering up Wells Fargo's "gaming" and "pinning" problem, Wells Fargo knowingly and willfully concluded that Mr. Blake's account was not in error when such conclusion could not reasonably have been drawn from the evidence available at the time of its investigation, in order to cover up Wells Fargo's wrongdoing.

63.     The "error" Mr. Blake alleged included online banking which Mr. Blake never signed up for; several additional linked bank accounts in Mr. Blake's name which he never signed up for; and then multiple maximum daily amount ATM cash withdrawals in a single day which collectively exponentially exceeded the daily maximum ATM withdrawal amount; multiple declined transactions; and

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

17.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

multiple withdrawal limit exceeded transactions over the 3 days from July 16, 2014 to July 18, 2014.  Furthermore, the $7,704.30 of unauthorized PIN Purchases, ATM Withdrawals, and Non-Wells Fargo ATM Transaction Fees occurred in Dekalb, Illinois and in Sycamore, Illinois from July 16, 2014 to July 18, 2014 while Mr. Blake was irrefutably in California.  Accordingly Mr. Blake is entitled to treble damages pursuant to 15 U.S.C. § 1693f in addition to his actual damages.

64.     As a result of Wells Fargo's wrongful conduct, Mr. Blake has suffered the loss of over $7,600 cash and interest, in addition to the loss of significant business profits from a lack of capital to operate his electrician business.  He suffered and continues to suffer significant damage to his credit from his inability to pay his bills in an amount to be proven at trial.

65.     Mr. Blake suffered and continues to suffer pain and suffering through severe stress, depression, and anxiety from Wells Fargo's knowingly false accusations that Mr. Blake made or authorized the disputed transactions himself. He also suffered and continues to suffer severe stress, depression, and anxiety from the poor condition of his finances and small business; the shame and embarrassment of having to borrow money from his mother; and the expense for attorney fees and costs to bring this lawsuit.

66.     Mr. Blake suffered and continues to suffer loss of enjoyment of life because he can no longer afford to pay for the activities he used to regularly enjoy. All of his damages were foreseeable and proximately caused by Wells Fargo because Wells Fargo knew or should have known that the $7,600 was taken from his business checking account for his small electrician business, and that he needed that money to continue his business operations.  Accordingly, Mr. Blake is entitled to his actual and proximate cause damages in amount to be proven at trial, treble damages, statutory damages of $1,000, attorney fees, and costs pursuant to 15 U.S.C. §§ 1693f, 1693m, and 1693h.

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

18.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

## **SECOND CAUSE OF ACTION**

### **(Negligence)**

67.    Plaintiff repeats and re-alleges each and every paragraph above as though fully set forth here.

68.    Pursuant to the Gramm-Leach-Biley Act, 15 U.S.C. § 6801 et seq., and the regulations promulgated from the legislation, Wells Fargo, as a financial institution, had and continues to have an affirmative duty to protect its customers' information against unauthorized access or use.  (12 C.F.R. Part 30, Appx. B.) Further:

> "When a financial institution becomes aware of an incident of unauthorized access to sensitive customer information, the institution should conduct a reasonable investigation to promptly determine the likelihood that the information has or will be misused.  If the institution determines that misuse of its information about a customer has occurred or is reasonably possible, it should notify the affected customer as soon as possible."  (12 C.F.R. Part 30, Appx. B.)

69.    Under California law, if a business is in possession of "computerized data that includes personal information," that business:

> "shall disclose any breach of the security of the system following discovery or notification of the breach in the security of data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person.  The disclosure shall be made in the most expedient time possible without unreasonable delay…"  (Cal. Civ. Code § 1798.82(a).)

70.    Under California law's imposition of a duty on businesses to disclose a breach in the security of customers' data, "personal information" includes an individuals unencrypted first name or initial and last name in combination with an unencrypted "[a]ccount number, credit or debit card number, in combination with

Blake v. Wells Fargo

any required security code, access code, or password that would permit access to an individual's financial account." (Cal. Civ. Code § 1798.82(h)(1).) "[P]ersonal information" also includes "[a] user name or email address, in combination with a password or security question and answer that would permit access to an online account." (Cal. Civ. Code § 1798.82(h)(2).)

71.    Under California's Penal Code, it is illegal for a person to use another's data for illegal purposes:  "Every person who willfully obtains personal identifying information… of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services… without the consent of that person, is guilty of a public offense…" (Cal. Pen. Code § 530.5(a).)

72.    Under California's Penal Code, "the word 'person' includes a corporation as well as a natural person." (Cal. Pen. Code § 7.)

73.    Under California's Penal Code, "personal identifying information" includes "any name, address, telephone number, … state or federal driver's license, or identification number, social security number, … demand deposit account number, savings account number, checking account number, PIN (personal identification number) or password, … date of birth, … telecommunication identifying information or access device, information contained in a birth or death certificate, or credit card number of an individual person, or equivalent form of identification." (Cal. Pen. Code § 530.55(b).)

74.    Wells Fargo owed duties to Mr. Blake to protect his information from unauthorized access or use; to prevent its employees from using Mr. Blake's personal identifying information without Mr. Blake's consent; to conduct reasonable investigation to promptly determine the likelihood that the  information was or will be misused, after unauthorized access to the sensitive information occurs; and to promptly notify Mr. Blake of breaches in security relating to his information as soon as reasonably possible.

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

20.

COMPLAINT FOR DAMAGES

Blake v. Wells Fargo

75.     Mr. Blake is informed and believes Wells Fargo breached its duties owed to Mr. Blake by doing little, if anything, to terminate "gaming" and "pinning" practices, among other illegal practices by its employees.  Wells Fargo fostered these practices and knew its employees engaged in them as an inevitable result of Wells Fargo's unrealistic quota system and managerial pressure on employees to reach these quotas.  Any changes Wells Fargo has made to policies, and employees it has terminated, has only been cosmetic, for the purpose of providing Wells Fargo plausible deniability, as Wells Fargo has not altered its quota system nor reduced pressure on Wells Fargo managers and employees to reach the quotas.

76.     Wells Fargo further breached its duties owed to Mr. Blake by specifically allowing unauthorized access or use to his personal identifying information without Mr. Blake's consent.  Wells Fargo signed Mr. Blake up for online banking without his consent or authorization, and opened at least four bank accounts in Mr. Blake's name without his consent or authorization, and then linked the unauthorized accounts to Mr. Blake's authentic Wells Fargo bank accounts without his knowledge or consent.  Then Wells Fargo transferred $7,600.00 out of Mr. Blake's authentic bank accounts into the unauthorized accounts opened by Wells Fargo.  Then the $7,600.00 was converted through approximately 20 unauthorized electronic fund transfers in the form of ATM/Debit Card PIN purchases and cash withdrawals in Illinois.

77.     Wells Fargo further breached its duties owed to Mr. Blake after failing to prevent unauthorized access or use of his personal identifying information by refusing to conduct a reasonable investigation to promptly determine the likelihood that his information was or will be misused, and failed to notify Mr. Blake of the breaches in security relating to his information.  This remains true, even at the time of the drafting of this Complaint 10 months after Mr. Blake's money was taken, and after Mr. Blake repeatedly submitted fraud claims to Wells Fargo to reimburse his money taken through unauthorized electronic fund transfers.  Wells Fargo continues

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

21.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

to refuse to process Mr. Blake's fraud claim in good faith and reimburse his money after determining he was the victim of fraud.  Further, Wells Fargo's conduct has all occurred under the relevant background that it knew Mr. Blake is a Los Angeles County resident and that Wells Fargo was under investigation by the Office of the Los Angeles City Attorney, Criminal Branch, for victimizing many other Wells Fargo customers under the same circumstances as Wells Fargo has victimized Mr. Blake.

78.    As a proximate cause of Wells Fargo's breach of duty, Mr. Blake has suffered the loss of over $7,600 cash and interest, in addition to the loss of significant business profits from a lack of capital to operate his electrician business. He suffered and continues to suffer significant damage to his credit from his inability to pay his bills.

79.    As a proximate cause of Wells Fargo's breach of duty, Mr. Blake suffered and continues to suffer pain and suffering through severe stress, depression, and anxiety from Wells Fargo's knowingly false accusations that Mr. Blake made or authorized the disputed transactions himself.  He also suffered and continues to suffer severe stress, depression, and anxiety from the poor condition of his finances and small business; the shame and embarrassment of having to borrow money from his mother; and the expense for attorney fees and costs to bring this lawsuit.

80.    As a proximate cause of Wells Fargo's breach of duty, Mr. Blake suffered and continues to suffer loss of enjoyment of life because he can no longer afford to pay for the activities he used to regularly enjoy.   All of his damages were foreseeable and proximately caused by Wells Fargo because Wells Fargo knew or should have known that the $7,600 was taken from his business checking account for his small electrician business, and that he needed that money to continue his business operations.

Jason Whooper
Attorney at Law
San Diego

22.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

81.     Additionally, Mr. Blake is informed and believes Wells Fargo committed the acts alleged herein maliciously, fraudulently, oppressively, with the wrongful intention of injuring Mr. Blake and with reckless and conscious disregard of Mr. Blake's rights, well being, and livelihood.  Wells Fargo knew its employees engaged in illegal "gaming" and "pining" and encouraged these practices for by maintaining a policy of unrealistically high sales quotas.

82.     When Mr. Blake timely submitted a fraud claim to Wells Fargo, it could have and should have immediately investigated the matter in good faith and returned Mr. Blake's money.  Had Wells Fargo done so within a reasonable time after Mr. Blake submitted his fraud claims, he would have suffered little more than a minor inconvenience.  However in reckless disregard of Mr. Blake's well being, Wells Fargo knowingly maliciously, fraudulently, and oppressively, with the intention of injuring Mr. Blake, denied his fraud claims without conducting a reasonable investigation, in order to cover up its "gaming" scandal in the midst of Wells Fargo being under investigation by the Office of the Los Angeles City Attorney, Criminal Branch for doing the same thing to countless other customers.

## THIRD CAUSE OF ACTION

### (Violation of Bus. & Prof. Code 17200 et seq.,

### Unfair Competition Law ("UCL"))

83.     Plaintiff repeats and re-alleges each and every paragraph above as though fully set forth here.

84.     Mr. Blake is informed and believes that beginning on a date unknown to him, but within the four years proceeding the filing of this Complaint, Wells Fargo, Defendants, and DOES 1-10, and each of them, have violated and conspired to violate the UCL by engaging in one or more of the following *unlawful* business acts and practices, among others:

a.      Willfully obtaining personal identifying information of another person (which includes name, address, telephone number, health insurance number,

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

23.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

state or federal driver's license or identification number, Social Security number, place of employment, employee identification number, professional or occupational number, mother's maiden name, demand deposit account number, savings account number, checking account number, PIN or password, alien registration number, government passport number, and date of birth), and using that information for an unlawful purpose, including to obtain or attempt to obtain credit, goods, services, real property, or medical information without the consent of that person, in violation of Cal. Pen. Code § 530.5(a).

b.      Being a party to any fraudulent conveyance of any contract or conveyance had, made, or contrived with intent to deceive and defraud others, or while being a party to any fraudulent conveyance of any contract or conveyance, wittingly and willingly putting I, using, avowing, maintaining, justifying, or defending the fraudulent conveyance of any contract or conveyance as true and done, had or made in good faith, or upon good consideration, in violation of Cal. Pen. Code § 531.

c.      Knowingly accessing and without permission using data, computers, computer systems, or computer networks to execute a scheme to defraud or wrongfully obtain money, property, or data, in violation of Cal. Pen. Code § 502(c)(1).

d.      Knowingly accessing, and without permission taking, copying, or making use of customer information, in violation of Cal. Pen. Code § 502(c)(2).

e.      Knowingly accessing, and without permission taking, copying, or making use of customer information, in violation of 15 U.S.C § 680 et seq. and the rules an regulations promulgated under these statutes, including, but not limited to, 12 C.F.R. Part 30, Appx. B.

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

24.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

f.      Being a business that owns or licenses computerized data that includes personal information, and failing to disclose breaches of the security of the system containing that data following discovery or notification of the breach by an unauthorized person, in violation of Cal. Civ. Code § 1798.82(a).

g.      Failing to provide their customers with notice of any misuse of their customer information, as required by 15 U.S.C § 680 et seq. and the rules an regulations promulgated under these statutes, including, but not limited to, 12 C.F.R. Part 30, Appx. B.

85.     Mr. Blake is informed and believes that beginning on a date unknown to him, but within the four years proceeding the filing of this Complaint, Wells Fargo, Defendants, and DOES 1-50, and each of them, have violated and conspired to violate the UCL by engaging in one or more of the following *unfair* business acts and practices, among others:

a.      Threatening incipient violations of the aforementioned California and Federal laws, and violating the public policy embodied in those laws.

b.      Violating the established public policy of the State of California, which, among other things, seeks to ensure that: all monetary contracts are duly authorized by each party; all bank accounts are authorized and agreed to by the customer in whose name the bank account is opened; residents of the state are not harmed in their credit reports by acts not actually performed, or debts not actually incurred, by that resident; personal information of an individual is not improperly obtained and used for an unlawful purpose; and that when personal information is obtained without authority, that the person whose information was obtained is informed immediately.

c.      Wells Fargo and Defendants' conduct as described in this Complaint has been immoral, unethical, oppressive, and unscrupulous in that Wells Fargo: (1) profits by improperly signing customers up for bank accounts to which the customers did not agree; (2) profits by improperly signing

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

25.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

customers up for online banking to which the customers did not agree; (3) exposes consumers to financial hardships involving unjustified debt collection and negative credit reporting, thus jeopardizing those customers' ability to obtain mortgages, automobile loans, and earn income; and (4) otherwise garnered an unfair advantage over lawfully competing businesses.

d.      Wells Fargo's acts and practices alleged in this Complaint have had, and continue to have, a substantial detrimental impact upon its customers and the community.  This detrimental impact is not outweighed by any countervailing reasons, justifications, and motives of Wells Fargo.  In short, the harm suffered by the customers and surrounding community far outweighs the utility of Wells Fargo's conduct.

86.      Mr. Blake is informed and believes that beginning on a date unknown to him, but within the four years proceeding the filing of this Complaint, Wells Fargo, Defendants, and DOES 1-50, and each of them, have violated and conspired to violate the UCL by engaging in one or more of the following *fraudulent* business acts and practices, among others:

a.      Using misrepresentation, deception, and concealment of material information to open unauthorized accounts in customers' names.

b.      Using misrepresentations, deception, and concealment of material information to view customers' personal information, and then failing to reveal to the customers that their personal information was compromised.

87.      The acts of unfair competition of Wells Fargo, Defendants, and DOES 1-50, and each of them, present a continuing threat to the public's health, safety, and welfare, and the public has no adequate remedy at law.  Accordingly, unless Wells Fargo, Defendants, and DOES 1-50 are permanently enjoined and restrained by order of this Court, they will continue to commit acts of unfair competition, and thereby continue to cause irreparable harm and injury to the public's health, safety, and welfare.

Jason Whooper
Attorney at Law
San Diego

26.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For Wells Fargo to be enjoined from engaging in the unlawful, unfair, and fraudulent "gaming" business acts and practices described in this Complaint;

2.    For actual compensatory damages in an amount to be proven at trial, but no less than $100,000;

3.    For Treble damages pursuant to 15 U.S.C. 1693f(e) in an amount to be proven at trial;

4.    For $1,000 statutory damages pursuant to 15 U.S.C. 1693m(a)(2);

5.    Restitution;

6.    For punitive damages in an amount to be proven at trial;

7.    For attorney fees and costs pursuant to 15 U.S.C. § 1693m(a)(3);

8.    For attorney fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

9.    For prejudgment and post-judgment interest; and

10.   For such other and further relief as the court may deem just and proper.

Respectfully submitted,

Dated: May 14, 2015        JASON WHOOPER ATTORNEY AT LAW

/s/ Jason A. Whooper

JASON A. WHOOPER (279972)

*Counsel for Plaintiff, Dennis R. Blake, Jr.*

JASON WHOOPER
ATTORNEY AT LAW
SAN DIEGO

27.

Blake v. Wells Fargo

COMPLAINT FOR DAMAGES